UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ELAINE L. CHAO, Secretary of Labor,
United States Department of Labor,

      Plaintiff,

      -against-

LEONARD SLUTSKY, SHARLENE SLUTSKY,
LEONARD MANDELBAUM, TOM PEREZ,
JACK NEIMAN, ADENA SAMOWITZ,
CLARK HOWER, MUTUAL ASSOCIATION
ADMINISTRATORS, INC., MUTUAL EMPLOYEES
BENEFIT TRUST, FINANCIAL CONSULTANTS
GUILD OF AMERICA, INC., AMERICAN EMPLOYEES
INDUSTRIAL GUILD, LOCAL 1, AMERICAN
EMPLOYEES INDUSTRIAL GUILD, LOCAL 2,
NETSCOR, INC., VCT FINANCIAL SERVICES, INC.,
and MARKETING MOTIVATION ASSOCIATES, INC.,

      Defendants.
-----------------------------------------------------------------X

MEMORANDUM & ORDER

No. 01-CV-7593 (SLT) (ETB)

**TOWNES, United States District Judge:**

## BACKGROUND

The Secretary of Labor of the United States Department of Labor (the "Secretary") brought this action against the defendants pursuant to Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, for monetary losses sustained by the Mutual Employees Benefit Trust ("MEBT"), an employee benefit plan. Before the Court is a motion for approval of a partial settlement. The motion was referred to United States Magistrate Judge E. Thomas Boyle, who issued a Report and Recommendation dated March 27, 2009 (the "R&R"), which recommends that the settlement be approved. For the reasons stated below, the Court declines to accept the recommendation to approve the settlement documents as drafted.



1

# FACTS

Defendants Leonard Mandelbaum, Tom Perez, Jack Neiman, and Adena Samowitz were named trustees of MEBT (collectively, the "Trustee Defendants"). (Complaint ¶ 7). Defendant Mutual Association Administrators, Inc. ("MAA") was a third-party administrator of MEBT, and defendant Sharlene Slutsky is MAA's owner. (Complaint ¶¶ 6, 9). Both Sharlene Slutsky and her husband, Leonard Slutsky, are sued as fiduciaries of MEBT. (Complaint ¶¶ 5, 6). National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), which is not a party to this action, insured MAA and the Trustee Defendants under an ERISA insurance policy. (Affidavit of Marc R. Lepelstat, sworn to April 27, 2009 ("Lepelstat Affidavit"), Docket No. 310-1, ¶¶ 3-7).

At the conclusion of a mediation on February 5, 2003, the Secretary and National Union agreed to a partial settlement of the case, which was subject to the consent of MAA and the Trustee Defendants. Under the agreement, National Union would pay $375,000 to resolve the claims against MAA and the Trustee Defendants. However, the Secretary was not precluded from imposing statutory penalties. (Letter from Marc R. Lepelstat to Neil A. Capobianco (February 7, 2003), attached as Exh. J to Lepelstat Affidavit).

The proposed settlement also did not require the Department of Labor to retract or address press releases that it had issued about MAA, and MAA claims that it had sought a settlement agreement that included such a provision because the press releases were hurting its ability to attract new clients. (Objections of MAA ("Objections"), Docket No. 303, p. 3). The Secretary refused to agree to amend the press releases, citing "Departmental policy." (Letter of Suzanne Demitrio, Senior Trial Attorney, U.S. Department of Labor (April 13, 2009), Docket No. 304).

National Union presented the settlement proposal to MAA and urged MAA to accept it. However, MAA's attorney informed National Union that MAA had decided not to agree to it. (Affirmation of Neil A. Capobianco (August 24, 2007), Docket No. 203-1, ¶ 6); Lepelstat Affidavit ¶ 17). In explaining the decision, it was stated that MAA "firmly believes it has committed no unlawful act" and that the "settlement contradicts MAA's intent to prove that it has acted in a lawful manner." (E-mail from Richard Howard to Neil Capobianco (February 11, 2003), attached as Exh. K to Lepelstat Affidavit).

In response, National Union refused to pay for any defense costs incurred by MAA after February 11, 2003, relying on a policy provision prohibiting MAA from "unreasonably" withholding its consent to a settlement. (National Union's Response to the Objections ("Response"), Docket No. 310, p. 4; Letter from Marc R. Lepelstat to Neil A. Capobianco (February 11, 2003), attached as Exh. L to Lepelstat Affidavit; Affirmation of Neil A. Capobianco (August 24, 2007), Docket No. 203-1, ¶ 7). An e-mail to MAA's attorney stated that "[t]hey are free to defend indefinitely on their own dime" and expressed National Union's intent to "settle without MAA." (E-mail from Larry Fine to Neil Capobianco (February 11, 2003), attached as Exh. K to Lepelstat Affidavit).

Thereafter, MAA's counsel moved to be relieved based on MAA's inability to pay for its own defense costs. (Affirmation of Neil A. Capobianco (August 24, 2007), Docket No. 203-1). The motion was granted, and MAA was given time to retain new counsel. (Order of September 18, 2007, Docket No. 213). In a letter to the Court, Sharlene Slutsky explained that MAA could not afford to pay for an attorney on its own and that discussions with National Union to "honor its policy" had "broken down." She stated that MAA was in debt and that "[i]t has been and

continues to be impossible for MAA to attract new business because the [Department of Labor] has posted its unproven accusations on the internet." (Letter of Sharlene Slutsky (January 25, 2008), Docket No. 230). MAA failed to obtain a new attorney, and a default judgment was issued against it for $1,779,111.00. (Judgment dated July 30, 2008, Docket No. 246).

In September 2008, MAA commenced a state court action seeking damages for National Union's failure to continue to pay MAA's defense costs (the "State Action"). In the first cause of action in the complaint (the "State Complaint"), MAA asserts that National Union breached the insurance contract and seeks compensatory, consequential, and incidental damages. (State Complaint, attached as Exh. R to Lepelstat Affidavit, ¶¶ 43-54). MAA also seeks punitive damages in its second cause of action. (State Complaint ¶¶ 55-57).

After MAA's default, National Union continued settlement discussions with the Secretary without MAA's participation, and an agreement to partially settle the case was reached. (Lepelstat Affidavit ¶ 23). It was agreed that National Union would fund a payment to resolve the claims against the Trustee Defendants and to satisfy the judgment against MAA. Claims against National Union, including MAA's claim in the State Action, would be barred. The settlement documents consist of a Partial Consent Order ("Consent Order") and a proposed Order Approving Claims Bar and Injunction ("Bar Order").

The Consent Order resolves the claims against the Trustee Defendants and provides for the satisfaction of the judgment against MAA for a payment by National Union of $389,000. (Consent Order, attached as Exh. A to Lepelstat Affidavit, ¶¶ 1, 3, 9, 19). This money would be used to fund a settlement account that would be administered by MEBT's independent fiduciary under the supervision of the Court. (Consent Order ¶ 1). Proceeds from the account would be

distributed to former MEBT beneficiaries and providers who were owed money from MEBT. (Consent Order ¶ 2). The Consent Order permanently enjoins the Trustee Defendants from acting as a fiduciary to MEBT and enjoins them from serving as a fiduciary for any other employee benefit plan for a five year period. (Consent Order ¶¶ 5,6). Defendants Leonard Slutsky and Sharlene Slutsky are not parties to the settlement, and the Consent Order does not dispose of the Secretary's claims against them. (Consent Order ¶¶ 9, 12).

The Bar Order would bar and enjoin any person who received notice of it from commencing and/or pursuing claims against the Trustee Defendants, MAA, or National Union. If such claims were already commenced, they would be deemed dismissed. (Bar Order, attached as Exh. B to Lepelstat Affidavit, ¶¶ 3,4). As such, the Bar Order would extinguish MAA's claim against National Union in the State Action. The Bar Order also contains a judgment reduction provision that would reduce the available recovery from Sharlene Slutsky and Leonard Slutsky "by the greater of: the amount paid to the MEBT pursuant to the Partial Consent Order; or the share of damages for which recovery would otherwise be available against any or all of the Trustee Defendants or MAA, based on their proportionate fault." (Bar Order ¶ 6).

Notice and an opportunity to participate in a hearing was needed to inform interested parties of the settlement proposal and the Bar Order. Notice was provided, and a hearing was held before Judge Boyle. MAA, through counsel, objected to the settlement on the ground that the Bar Order would enjoin it from pursuing the State Action. (Letter of Kenneth L. Robinson (February 4, 2009), Docket No. 291).

The R&R recommends that the settlement be approved as "fair and reasonable" and correctly predicts that a trial would result in costly and time consuming litigation. It is also notes

5

that the probability of success on the merits of the Secretary's claims against the Trustee Defendants is uncertain and that, even if the Secretary was successful, there may be difficulties with collecting a judgment. (R&R, Docket No. 300, pp. 7-8).

The R&R rejects MAA's objection on the ground that bar orders are often used to facilitate settlement and cites *In re WorldCom, Inc. ERISA Litig.*, 339 F. Supp. 2d 561 (S.D.N.Y. 2004) (hereinafter *In re WorldCom*) and *Local 875 I.B.T. Pension Fund v. Pollack*, 49 F. Supp. 2d 130 (E.D.N.Y. 1999) (hereinafter *Local 875*). (R&R p. 10). The All Writs Act, 28 U.S.C. § 1651, the Anti-Injunction Act, 28 U.S.C. § 2283, and *In re Baldwin-United Corp.*, 770 F.2d 328 (2d Cir. 1985) (hereinafter *In re Baldwin*) are also cited as authority for the issuance of bar orders. (R&R pp. 10-11).

According to the R&R, MAA, having defaulted, "should not be permitted to come in at the eleventh hour and undo all of the time and effort undertaken by counsel for the Secretary and the Trustee Defendants." (R&R p. 12). The R&R also questions the soundness of MAA's objection to the settlement because the injunction against the prosecution of the State Action "seems to be a small price to pay when compared to" the satisfaction of the Secretary's judgment against it. (R&R p. 13).

MAA has filed objections to the R&R, reiterating its complaint that the Bar Order would unfairly prevent it from pursuing the State Action. It contends that the partial settlement could proceed without a bar of the State Action and that "no rationale exists" for the bar "[o]ther than to punish MAA." (Objections pp. 2, 3). It distinguishes *In re WorldCom* and *Local 875* from the present case because those cases dealt with claims against a settling defendant, and the Bar Order enjoins claims against a non-party, National Union. (Objections p. 4). MAA also argues that the

6

All Writs Act does not provide a legitimate basis for the bar of the State Action. (Objections pp. 4-6).

The Trustee Defendants filed no response to MAA's objections, and state that they "take no position as to whether the Order should carve out" MAA's claim against National Union. (Letter of Myron D. Rumeld (April 20, 2009), Docket No. 308). National Union did file a formal response to MAA's objections. It argues that MAA has no basis to object to a settlement because it defaulted and because the settlement does not impose any financial liability on MAA. (Response pp. 1, 9-10). National Union contends that, even though it is not a settling defendant, it is still entitled to a bar of claims against it because it would fund the settlement. (Response pp. 13-14).

## DISCUSSION

Pursuant to 28 U.S.C. § 636(b)(1), the Court has reviewed *de novo* those portions of the R&R to which MAA has objected.[1] The Court declines to accept the recommendation made in the R&R because the Consent Order and the Bar Order cannot be approved as currently drafted.

"A settlement bar should not be approved unless it is narrowly tailored and preceded by a judicial determination that the settlement has been entered into in good faith and that no one has been set apart for unfair treatment." *In re Masters Mates & Pilots Pension Plan and IRAP Litig.*, 957 F.2d 1020, 1031 (2d Cir. 1992) (hereinafter *Masters*). It is well established that "a district court may properly bar claims of nonsettling defendants against settling defendants for

---

[1] None of the parties have asserted that MAA's objections to the R&R should not be considered because of MAA's default. However, this is immaterial because, even if MAA was not a proper objector, the Court would reach the same determination as it does herein through a review for clear error.

contribution and indemnity." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 273 (2d Cir. 2006); *see also Local 875*, 49 F. Supp. 2d at 131-33). Indeed, it is unlikely that settlements could be reached "[w]ithout the ability to limit the liability of settling defendants through bar orders." *In re WorldCom*, 339 F. Supp. 2d at 568; *see also In re Ivan F. Boesky Secs. Litig.*, 948 F.2d 1358, 1369 (2d Cir. 1991).

In order to alleviate the "potential harshness" of a bar order, there must be a "judgment credit provision that protects a nonsettling party from paying damages exceeding its own liability." *Denney*, 443 F.3d at 274. "By ensuring that, at the end of the day, the non-settling defendants are not held responsible for any damages for which the settling defendants are proven liable," a judgment credit provision "adequately compensates" non-settling defendants for indemnity and contribution claims, "as well as for any other claims where the harm to" non-settling defendants "is based on their liability" to a plaintiff. *Gerber v. MTC Elec. Techns. Co., Ltd.*, 329 F.3d 297, 306 (2d Cir. 2003).

Not all claims by a non-settling defendant against a settling defendant are properly extinguishable by a bar order. A settlement bar order is overly broad and unfair if it extinguishes an independent claim by a non-settling defendant against a settling defendant that seeks damages which are not based on the liability of the non-settling defendant to a plaintiff. *Id.* at 306-307; *Allstate Ins. Co. v. Halima*, No. 06 CV 1316, 2008 WL 2673333, at *2 (E.D.N.Y. June 26, 2008). A bar that would apply to such claims is troublesome because a judgment reduction provision may not compensate a non-settling defendant for them. *See Masters*, 957 F.2d at 1033.

While orders barring claims by non-settling defendants against settling defendants are routinely approved, "it is quite another matter when the bar order precludes a nonsettling

defendant from maintaining a claim of contribution or indemnity against *nonparties.*" *F.D.I.C. v. Geldermann, Inc.*, 975 F.2d 695, 698 (10th Cir. 1992). Such claims should be separately adjudicated. *See id.*

This case is unique because the Bar Order extinguishes a claim by a defaulted defendant, MAA, against a non-party, National Union. It does not merely extinguish contribution and indemnity claims between non-settling and settling defendants. The Bar Order cannot be approved because it is not narrowly tailored and unfairly extinguishes a separate claim that is not based on the underlying allegations of ERISA liability in this action. *See Masters*, 957 F.2d at 1031.

MAA's claim in the State Action is for National Union's alleged breach of its insurance contract and MAA seeks punitive as well as compensatory and consequential damages. That claim is not before this Court and should be separately adjudicated between MAA and National Union in the State Action. It should not be extinguished in this lawsuit in MAA's absence. Contrary to National Union's contentions, MAA's default in this case should not prevent it from pursuing a claim in state court against the party that it alleges is responsible for its default.

Neither the All Writs Act nor the Anti-Injunction Act would authorize the Court to approve the bar of MAA's claim against National Union. The All Writs Act states that federal courts may "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The act does allow a district court to "enjoin actions in state court where necessary to prevent relitigation of an existing federal judgment." *In re Baldwin*, 770 F.2d at 335. It also permits an injunction before a federal judgment is issued "'to prevent a state court from so interfering with a federal court's

9

consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.'" *Id.* (quoting *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 295 (1970)). However, here the injunction against MAA's prosecution of the State Action is not necessary to prevent the relitigation of an existing judgment by this Court. Moreover, the State Action will not harm this Court's ability to decide the case before it.

Similarly, the injunction against MAA's maintenance of the State Action does not fall within an exception to the Anti-Injunction Act. Under that statute: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The injunction against MAA's prosecution of the State Action is not necessary to the Court's jurisdiction; nor is it needed to effectuate a judgment of the Court.

The Court is mindful of the protracted nature of this litigation and that much time and effort has been put into endeavors to narrow this case through a partial settlement. However, an insurer cannot abandon its defense of an insured for not consenting to a settlement and then, after the insured defaults, negotiate a bar of a claim that the insured has against it. While it may be wise for MAA to trade its state court claim against National Union for a satisfaction of the judgment in this case, that is not the Court's decision to make. Nor may National Union dictate MAA's legal strategy after it chose to stop providing for its defense. The proposed settlement bar cannot be approved because it is overly broad and unfairly affects the rights of MAA. If the parties agree to narrow the reach of the Bar Order, they may submit a new application for court approval of a partial settlement.

## CONCLUSION

For the reasons stated above, the Court declines to accept the recommendation to approve the proposed Partial Consent Order and Order Approving Claims Bar and Injunction. The application for court approval of these documents is denied without prejudice to renewal upon modification of the documents in accordance with this Order.

SO ORDERED.

Dated: September 30, 2009
Brooklyn, New York

/s/ SANDRA L. TOWNES
UNITED STATES DISTRICT JUDGE